UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| EVERTON BARTLEY, | |
| Plaintiff, | Case No. 3:18-cv-16283(BRM)(TJB) |
| v. | **OPINION** |
| STATE OF NEW JERSEY, et al., | |
| Defendants. | |

Before this Court is *pro se* prisoner Everton Bartley's ("Plaintiff") civil rights complaint pursuant to 42 U.S.C. § 1983. (ECF No. 1.) After reviewing his affidavit of indigence (ECF No. 3), the Court grants him leave to proceed *in forma pauperis* and orders the Clerk of the Court to file the Complaint.

At this time, the Court must review the Complaint, pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A, to determine whether it should be dismissed as frivolous or malicious, for failure to state a claim upon which relief may be granted, or because it seeks monetary relief from a defendant who is immune from such relief. For the reasons set forth below, and for good cause appearing, the Complaint is **DISMISSED** in its entirety.

**I. BACKGROUND**

According to the Complaint,[1] in April 1992, Plaintiff was traveling with two friends and his toddler daughter, from a music engagement in New York to his home in North Carolina. (Compl. (ECF No. 1), Att. B.) While on the New Jersey Turnpike around 2:00 am., a state trooper

---

[1] The factual allegations are taken from the Complaint and are accepted as true for purposes of this screening only. The Court has made no findings as to the veracity of Plaintiff's allegations.

who was directly in front of Plaintiff, appeared to pull over another car. (*Id.*) However, as Plaintiff drove past the trooper and other car, the trooper followed Plaintiff's car instead. (*Id.*) Trooper #1 initiated the stop on the Turnpike by ordering Plaintiff over his loudspeaker to "back up" and exit the off-ramp. (*Id.*) Plaintiff pulled into a service station, where he then noticed the other car which was initially under Trooper #1's pursuit, parked at the service station with no driver in the car or any other passengers. (*Id.*) Trooper #1 approached the driver's side of Plaintiff's vehicle and requested to see his license and registration. (*Id.*) Trooper #2 arrived within a few minutes, while Trooper #1 was questioning Plaintiff's reasons for travel. (*Id.*) Upon Trooper #2's arrival, he exited his patrol car went into the service station and returned with the driver of the other vehicle. (*Id.*) Plaintiff did not know the driver of the other vehicle and had never seen him before that day. (*Id.*) Trooper #1 ordered Plaintiff and his passengers to exit the vehicle. (*Id.*) Plaintiff's daughter was secured in a car seat, so Plaintiff removed her and held her while Trooper #1 and Trooper #2 searched his vehicle. (*Id.*) It was apparent the driver of the other vehicle was under arrest at this point. (*Id.*) While searching the vehicle, Plaintiff heard Trooper #1 and Trooper #2 comment "we just got some more of these Carolina n*****rs." (*Id.*) They again stated "we'll teach these black mother*****s a lesson." (*Id.*) Plaintiff remained quiet and was placed under arrest. (*Id.*) Trooper #3 arrived and he said "Carolina Blacks…lock 'em up," or words to that effect. (*Id.*)

The Troopers collectively searched Plaintiff's vehicle and claimed they found a citation from the driver of the other vehicle in Plaintiff's car. (*Id.*) This evidence was planted or fabricated. (*Id.*) At no point did Plaintiff possess any documents belonging to the other driver in his car or on his person. (*Id.*) The Troopers searched the other vehicle and found "illegal narcotics." (*Id.*) At no point did Plaintiff possess any narcotics. (*Id.*) According to Plaintiff, the Troopers set up a ruse

with the other driver and arrested Plaintiff's passengers and him as accomplices. (*Id.*) Plaintiff states he was not speeding, nor was there any probable cause to stop his vehicle. (*Id.*)

In July 1992, a grand jury indicted Plaintiff on charges of possession with intent to distribute; possession of a controlled dangerous substance and endangering the welfare of a child. (*Id.*, Ex. A.) On April 29, 1996, Plaintiff pled guilty to possession with intent to distribute and was sentenced to five years incarceration. (*Id.*, Ex. B.) On November 16, 2016, the Attorney General moved to vacate the judgment of conviction and dismiss the indictment against Plaintiff in light of the racial profiling by State Police that had been revealed in the years after Plaintiff's conviction. (*Id.*, Att. A.) On November 10, 2018, Plaintiff filed this complaint raising § 1983 claims of selective enforcement, illegal search, false arrest and malicious prosecution. He also raises corresponding state law claims and a policy claim against Middlesex County. Finally, he raises a § 1985 conspiracy claim.

He is seeking declaratory and monetary relief. (Compl. 18-19.)

## II. LEGAL STANDARD

### A. *Sua Sponte* Dismissal

Pursuant the Prison Litigation Reform Act, Pub. L. No. 104-134, §§ 801-810, 110 Stat. 1321-66 to 1321-77 (April 26, 1996) ("PLRA"), district courts must review complaints in those civil actions in which a prisoner is proceeding *in forma pauperis*, *see* 28 U.S.C. § 1915(e)(2)(B), seeks redress against a governmental employee or entity, *see* 28 U.S.C. § 1915A(b), or brings a claim with respect to prison conditions, *see* 42 U.S.C. § 1997e. The PLRA directs district courts to *sua sponte* dismiss any claim that is frivolous, is malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief.

This action is subject to *sua sponte* screening for dismissal under 28 U.S.C. § 1915(e)(2)(B) and 1915A because Plaintiff is a prisoner who is proceeding as indigent.

According to the Supreme Court's decision in *Ashcroft v. Iqbal*, "a pleading that offers 'labels or conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). To survive *sua sponte* screening for failure to state a claim, the complaint must allege "sufficient factual matter" to show that the claim is facially plausible. *Fowler v. UPMS Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (citation omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Belmont v. MB Inv. Partners, Inc.*, 708 F.3d 470, 483 n.17 (3d Cir. 2012) (quoting *Iqbal*, 556 U.S. at 678). Moreover, while pro se pleadings are liberally construed, "pro se litigants still must allege sufficient facts in their complaints to support a claim." *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013) (citation omitted).

**B. Section 1983 Actions**

A plaintiff may have a cause of action under 42 U.S.C. § 1983 for certain violations of his constitutional rights. Section 1983 provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

Therefore, to state a claim for relief under § 1983, a plaintiff must allege, first, the violation of a right secured by the Constitution or laws of the United States and, second, the alleged

deprivation was committed or caused by a person acting under color of state law. *See West v. Atkins*, 487 U.S. 42, 48 (1988); *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011).

## III. DECISION

### A. False Arrest, Illegal Search, Selective Enforcement, Conspiracy

Section 1983 claims are governed by the applicable state's statute of limitations for personal-injury claims. *Wallace v. Kato*, 549 U.S. 384, 387 (2007); *see also Cito v. Bridgewater Twp. Police Dep't*, 892 F.2d 23, 25 (3d Cir. 1989). Under New Jersey law, there is a two-year statute of limitations period for personal-injury torts. N.J. Stat. Ann. § 2A:14–2. Therefore, Plaintiff's § 1983 claims are governed by a two-year statute of limitations. *See Cito*, 892 F.2d at 25. The limitation period begins to run on the accrual date, which is governed by federal law. *Kach v. Hose*, 589 F.3d 626, 634 (3d Cir. 2009). Under federal law, a claim accrues when the facts which support the claim reasonably should have become known to the plaintiff. *Sameric Corp. v. City of Phila.*, 142 F.3d 582, 599 (3d Cir. 1998).

New Jersey law governs when accrual of a § 1983 claim may be delayed pursuant to the discovery rule and when a limitation period may be equitably tolled. *See Dique v. New Jersey State Police*, 603 F.3d 181, 185 (3d Cir. 2010). The discovery rule postpones a claim from accruing if a plaintiff is reasonably unaware that he has suffered an injury or, even though he is aware of the injury, that it was the fault of an identifiable person. *See Caravaggio v. D'Agostini*, 765 A.2d 182, 187 (N.J. 2001). "[E]quitable tolling may be applied where 'the complainant has been induced or tricked by his adversary's misconduct into allowing the filing deadline to pass' or where a plaintiff "has in some extraordinary way been prevented from asserting his rights," or where a plaintiff has timely asserted his rights mistakenly by either defective pleading or in the wrong forum. *Freeman v. State*, 788 A.2d 867, 880 (N.J. Super. Ct. App. Div.) (internal citations and quotations omitted).

"[A]bsent a showing of intentional inducement or trickery by a defendant, the doctrine of equitable tolling should be applied sparingly and only in the rare situation where it is demanded by sound legal principles as well as the interests of justice." *Id.*

With regard to his claims for false arrest and illegal search, the Court finds these are barred by the statute of limitations. A claim of false arrest, and the accompanying claim for false imprisonment, accrues immediately upon the arrest at issue. *Wallace*, 549 U.S. at 389–90 & n.3, 127 S. Ct. 1091; *Singleton v. DA Philadelphia*, 411 F. App'x 470, 472 (3d Cir. 2011) (accrual of a claim for false arrest occurred on the date the plaintiff "was arrested and charges were filed against him"). Nevertheless, while the claim accrues upon arrest, the statute of limitations does not begin to run at the same time. Instead, the statute of limitations for a false arrest/imprisonment claim begins to run "when the individual is released, or becomes held pursuant to legal process," *i.e.*, when he is arraigned. *Alexander*, 367 F. App'x at 290 n.2 (citing *Wallace*, 549 U.S. at 389–90, 127 S. Ct. 1091); *see also Pittman v. Metuchen Police Dep't*, 441 F. App'x 826, 828 (3d Cir. 2011).

Even if the Court were to give Plaintiff the benefit of using the date of his guilty plea as the date he was "held pursuant to the legal process," that was still more than twenty years before he filed his Complaint in 2018. As such, his false arrest claim is dismissed without prejudice as untimely as to all Defendants. Plaintiff's Fourth Amendment claim for unlawful search is also dismissed because it is barred by the two-year limitations period. That claim accrued, and the limitation period began to run, at the time Plaintiff was injured in 1992. *Mujaddid v. Wehling*, 663 F. App'x 115, 119 (3d Cir. 2016) (explaining unlawful search claims accrue at the time of injury); *Rolax v. Whitman*, 53 F. App'x 635, 637 (3d Cir. 2002) (unlawful search claim accrues at time of search).

As to Plaintiff's selective enforcement claim, that claim is also untimely. Typically, a "selective-enforcement claim will accrue at the time that the wrongful act resulting in damages occurs." *Dique*, 603 F.3d at 188. Under certain circumstances, however, a plaintiff may be reasonably unaware he has been injured, and, in such circumstances, the selective enforcement claim does not accrue until the plaintiff becomes aware he has been the victim of selective enforcement. *Id.* The plaintiff in *Dique*, for instance, was "reasonably unaware of his injury because [the arresting officer] purported to stop his car for a speeding violation." *Dique*, 603 F.3d at 188. Accordingly, Dique's selective-enforcement claim did not accrue, under the discovery rule, until "his attorney became aware of the extensive documents describing the State's pervasive selective-enforcement practices," including performing traffic stops on the basis of racial profiling. *Id.*

In order to delay accrual by operation of the discovery rule, however, a plaintiff must plead facts showing he was unaware of his injury or unaware his injury was attributable to an identifiable person. Other courts in this district have distinguished *Dique* when a plaintiff knew about the improper nature of the arrest at the time it occurred. *See Love v. City of New Brunswick*, No. 16-2586, 2018 WL 429247, at *8 (D.N.J. Jan. 16, 2018) ("[T]he facts alleged in the Complaint plainly indicate that Plaintiff knew at the time of his arrest in 2009 that he had been injured by the Defendant Officers who assaulted him, searched his person and car, and falsely arrested him on drug charges. Although he did not know the present theory of his case, *i.e.*, selective enforcement based on racial profiling or the possibility of additional defendants, he was certainly aware that he had been injured and had a complete cause of action in 2009."); *Lopez v. Monmouth Cty. Soc'y for the Prevention of Cruelty to Animals*, No. 16-2956, 2017 WL 1528721, at *5 (D.N.J. Apr. 26, 2017) ("Consequently, unlike the plaintiff in *Dique*, Plaintiffs in this case were never under the

7

misapprehension that Giuliano, Amato, or the MCSPCA had any basis to issue summonses to Mercedes Lopez for any mistreatment of animals"); *Love v. N.J. State Police*, No. 14-1313, 2016 WL 3046257 (D.N.J. May 26, 2016) (finding plaintiffs should reasonably have discovered their selective enforcement injuries at the time of arrest and search, because plaintiffs were allegedly arrested for "no apparent reason" and defendants purportedly falsely claimed to have discovered controlled substances in their search of plaintiffs' persons and car); *Jones v. Somerset Cty. Prosecutor's Office*, No. 15-2629, 2017 WL 1337432, at *8 (D.N.J. Apr. 7, 2017) ("Similarly, the facts alleged in the Amended Complaint indicate that Plaintiff knew at the time of his arrest that he had been injured by Defendant Walsh, as Walsh allegedly lacked probable cause to arrest Plaintiff for the robbery and knew of the existence of the video tape, which showed Mr. Blanchard committing the robbery. As such, at the time of his arrest and imprisonment in June 2012, Plaintiff reasonably should have discovered his selective enforcement injuries.").

Much like the factual scenarios in these other cases, Plaintiff has more than sufficiently stated he knew there was no basis for his arrest on the night it occurred. He alleges he had never met the other individual; he never had any drugs in his possession; never had anything from the other driver's car in his possession; and the troopers openly made racist comments and stated they were going to "lock 'em up." In short, the Complaint is replete with allegations showing Plaintiff was aware of the facts necessary for his selective enforcement claim on the night of his arrest. As a result, his § 1983 claim filed over 20 years later is time barred.

Plaintiff's § 1985 conspiracy claim is likewise dismissed. A § 1985 claim accrues when a plaintiff knew or should have known of the alleged conspiracy. *Dique*, 603 F.3d at 189 (citing *Bougher v. Univ. of Pitts.*, 882 F.2d 74, 80 (3d Cir. 1989)). The New Jersey two-year statute of limitations applies to section 1985 claims and runs from the date of each overt act causing damage

8

to a plaintiff. *Id.* (citing *Cito*, 892 F.2d at 25; *Bougher*, 882 F.2d at 80). As discussed above, based on the allegations of the Complaint, Plaintiff was clearly aware of the selective enforcement, false arrest, illegal search at the time of his arrest. Because his § 1985 conspiracy claim arising from these actions was filed more than twenty years later, it is barred by the statute of limitations.

**B. Middlesex County**

In his Complaint, Plaintiff includes a claim against Middlesex County, stating generally the County employed the officers who committed the racial profiling and maintained a policy of targeting African-Americans based solely on their race. (ECF No. 1 at 16-18.) By his own admission, the New Jersey State Police is a state agency and Defendants Dintino, Fuentes and the Does are employees of the State Police. (*Id.* ¶¶ 6, 7.) As state employees, it is unclear how Middlesex County is involved in this matter. It appears Plaintiff included Middlesex County based purely on the mention of it in the Deputy Attorney General's certification dismissing the charges against Plaintiff. (*Id.*, Att. A.) However, a review of the certification reveals Middlesex County was mentioned only as the geographic location of the activities of the State Police, not to suggest the County was involved. Because Plaintiff raised a claim against Middlesex County based its alleged employment of the individuals responsible for the racial profiling, and, by his own admission, those individuals were actually employed by the State, any intended claim against Middlesex County is dismissed.

**C. Malicious Prosecution**

Finally, Plaintiff alleges a claim of malicious prosecution against Defendants Dintino, Fuentes and the Does. To state a valid malicious prosecution claim, Plaintiff must establish:

> (1) the defendant initiated a criminal proceeding;
> (2) the criminal proceeding ended in plaintiff's favor;
> (3) the proceeding was initiated without probable cause;

9

> (4) the defendant acted maliciously or for a purpose other than bringing the plaintiff to justice; and
> (5) the plaintiff suffered deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding.

*Kossler v. Crisanti*, 564 F.3d 181, 186 (3d Cir. 2009) (quoting *Estate of Smith v. Marasco*, 318 F.3d 497, 521 (3d Cir. 2003)).

The purpose of the second requirement—favorable termination—is "to avoid 'the possibility of the claimant [sic] succeeding in the tort action after having been convicted in the underlying criminal prosecution, in contravention of a strong judicial policy against the creation of two conflicting resolutions arising out of the same or identical transaction.'" *Id.* at 187 (quoting *Heck v. Humphrey*, 512 U.S. 477, 484 (1994)). Accordingly, the Third Circuit has ruled "a malicious prosecution claim cannot be predicated on an underlying criminal proceeding which terminated in a manner not indicative of the innocence of the accused." *Kossler*, 564 F.3d at 187. As relevant here, "[a] plaintiff may attempt to indicate his innocence by demonstrating that his prior criminal proceeding terminated . . . [due to] the formal abandonment of the proceedings by the public prosecutor." *Kossler*, 564 F.3d at 187.

According to Plaintiff, "[o]n November 28, 2016, the criminal indictment – [sic] prosecution and conviction against Plaintiff was resolved in his favor when the indictment was dismissed with prejudice and the conviction vacated by the Attorney General of New Jersey. Plaintiff asserts he is innocent of the charges, which were fabricated against him." (ECF No. 1 ¶ 26.) However, as also held by numerous courts in this District, "[a] conviction vacated because of colorable issues of racial profiling does not establish that plaintiff is innocent of the crime charged in the underlying prosecution." *Hilton v. Whitman*, No. 04-6420, 2008 WL 5272190 (D.N.J. Dec. 15, 2008) (collecting cases); *see also Morris v. Verniero*, 453 F. App'x 243, 246 (3d Cir. 2011)

(plaintiff did not demonstrate favorable termination when charges dismissed due to possible racial profiling and plaintiff claimed drugs were planted).

Contrary to Plaintiff's assertions, the DAG's motion to dismiss the charges against him and vacate his conviction does not speak to his innocence of the crime. Rather, it merely states "this case falls within the relevant time frame for which defendants making such claims had made a colorable basis showing [sic], entitling them to selective enforcement discovery." (ECF No. 1, Att. A). It further relies on the reasoning stated in prior motions to dismiss filed on April 19, 2002 in a large number of cases where racial profiling was also suspected. (*Id.*). Nothing about the DAG's motion suggests the charges were dismissed due to Plaintiff's innocence. *See Kossler*, 564 F.3d at 188.

Plaintiff does allege in his Complaint he is innocent of the charges and maintains the State Troopers planted the citation from the other car in his vehicle; however, he does not address why he then pled guilty to a charge of possession with intent to distribute. It appears his Complaint is the first time Plaintiff has asserted his innocence and contradicted his prior guilty plea, made under the penalty of perjury. Such an assertion is insufficient to support an allegation of favorable termination. *See Love*, 2016 WL 3046257, at *14 ("At no point during the prior criminal proceedings are Primary Plaintiffs alleged to have asserted their innocence or disputed the veracity of their guilty pleas . . . . This late assertion of innocence is not a basis to allege that their criminal proceedings ended in a favorable termination).

Because the decision to dismiss the charges and vacate the conviction did not suggest innocence, and in light of his guilty plea to the possession with intent to distribute charge, the Court finds Plaintiff has failed to meet the favorable termination prong for a malicious prosecution claim. Accordingly, this claim is also dismissed without prejudice.

**IV. CONCLUSION**

For the reasons stated above, the Complaint is dismissed without prejudice in its entirety pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A for failure to state a claim upon which relief may be granted.[2] Because it is conceivable Plaintiff may be able to supplement his pleading with facts sufficient to overcome the deficiencies noted herein, Plaintiff is granted leave to move to re-open this case and to file a proposed amended complaint. An appropriate order follows.

Dated: August 30, 2019

*/s/ Brian R. Martinotti*
**HON. BRIAN R. MARTINOTTI**
**UNITED STATES DISTRICT JUDGE**

---

[2] Because the Court dismissed all federal claims, the Court declines to exercise supplemental jurisdiction over Plaintiff's state law claims. *See* 28 U.S.C. § 1367(c)(3) (a district court may decline to exercise supplemental jurisdiction over a claim if the court "has dismissed all claims over which it has original jurisdiction.")